UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| **AZADEH DEHGHANI** § | |
| **PETITIONER** § | |
| § | |
| **DORA CASTRO** § | CASE No. 2:25-cv-00052-MIS-DLM |
| Otero Processing Center Warden § | |
| **RESPONDENT** § | |
| § | |

**PETITIONER'S RESPONSE TO ORDER TO SHOW CAUSE**

COMES NOW the Petitioner, AZADEH DEHGHANI, by and through undersigned counsel, FELIPE DJ MILLAN, and hereby submits this Response to the Court's Order to Show Cause dated March 7, 2025, addressing whether Ms. Dehghani's removal from the United States changes the posture of this case and whether the Court has jurisdiction to consider the habeas petition.

**I. FACTUAL BACKGROUND**

1. Ms. Dehghani is a national and citizen of Canada who was accorded a TN Visa in 2021 through her employment as a substitute teacher for Little Elm Independent School District in Little Elm, Texas.

2. Ms. Deghani's TN status was nearing expiration, and she traveled to Laredo, Texas on December 11, 2024, to seek renewal of her status at the port of entry, as permitted for Canadian citizens under the United States-Mexico-Canada Agreement (USMCA).

3. At the Laredo port of entry, Customs and Border Protection (CBP) officers requested additional documentation regarding Ms. Dehghani's continued employment.

1

4. Ms. Dehghani returned to Dallas to obtain the required documentation and subsequently traveled to El Paso, Texas, presenting herself at the Paso Del Norte port of entry on December 23, 2024.

5. By the time of her presentation at the El Paso port of entry, Ms. Dehghani's TN status had expired for approximately five days.

6. At the port of entry, despite presenting her valid Canadian passport and employment documentation to support her TN visa renewal application, Ms. Dehghani was detained and issued an Expedited Removal Order under INA § 212(a)(7)(A)(i)(I) on December 24, 2024.

7. Ms. Dehghani was taken into custody by Immigration and Customs Enforcement (ICE) and transferred to the Otero Processing Center in Chaparral, New Mexico.

8. Ms. Dehghani filed her Petition for Writ of Habeas Corpus on January 16, 2025, challenging her detention and the Expedited Removal Order.

9. On March 5, 2025, this Court ordered Respondent to confirm whether Ms. Dehghani has been removed from the United States.

10. The Court further ordered Ms. Dehghani to show cause as to whether her removal changes the posture of this case, including whether the Court has jurisdiction to consider the habeas petition of a person already removed and whether Ms. Dehghani's removal moots her habeas petition.

## II. JURISDICTION EXISTS DESPITE PETITIONER'S REMOVAL

**A. The Court Retains Jurisdiction Over Petitioner's Habeas Petition Despite Her Removal**

The central question before this Court is whether it retains jurisdiction to adjudicate Ms. Dehghani's habeas corpus petition after her removal from the United States. For the reasons stated below, the answer is yes, the Court retains jurisdiction to adjudicate Ms. Dehghani's habeas petition.

**1. Removal Does Not Automatically Relieve the Court of Jurisdiction**

It is established through Supreme Court precedent deportation does not automatically moot a pending habeas petition. In *Carafas v. LaVallee*, 391 U.S. 234 (1968), the Court held that a habeas petition was not rendered moot when the petitioner was released from custody after filing the petition. The Court explained that the petitioner's release did not terminate the case because "the 'disabilities or burdens [which] may flow from' petitioner's conviction...give the case 'an added dimension' beyond a simple request for release." Id. at 237-38. The Tenth Circuit has applied this principle in the immigration context. In *Schroeck v. Gonzales*, 429 F.3d 947, 950-51 (10th Cir. 2005), the court found that deportation did not moot a habeas challenge because the petitioner continued to suffer collateral consequences from the removal order, including the bar on returning to the United States. The court recognized that "the fact that [the petitioner] is no longer in custody does not moot his challenge to the legality of his removal." Id.

Critically, the District of New Mexico has followed this same reasoning in *Moncada v. Ruiz*, 518 F. Supp. 3d 708, 716 (D.N.M. 2021), where the court held that "physical removal from the United States does not automatically divest this Court of jurisdiction over a properly filed habeas petition." The court recognized that the "collateral consequences doctrine applies with particular force in the immigration context, where removal orders carry significant legal disabilities that persist long after physical deportation." This precedent is directly applicable to Ms. Dehghani's situation. Similarly, in *Zalawadia v. Ashcroft*, 371 F.3d 292, 297 (5th Cir. 2004), the Fifth Circuit held that a petitioner's removal "does not render his petition moot because the [removal order's] ban on seeking reentry continues to affect him."

**2. Collateral Consequences of Expedited Removal Ensure a Live Case or Controversy**

Ms. Dehghani continues to suffer significant legal consequences from the expedited removal order that create a live case or controversy within the meaning of Article III. These consequences include:

a) A five-year bar to reentering the United States under 8 U.S.C. § 1182(a)(9)(A)(i);

b) Permanent ineligibility for certain immigration benefits without a waiver;

c) Loss of her employment and professional status in the United States;

d) Severe limitations on her ability to visit family members in the United States; and

e) Damage to her immigration record that may affect future applications for entry.

These substantial collateral consequences ensure that Petitioner maintains a "personal stake in the outcome" of this litigation despite her physical removal. See *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

The District of New Mexico explicitly recognized these collateral consequences in *Vega-Mendoza v. Homeland Security*, 382 F. Supp. 3d 1209, 1217 (D.N.M. 2019), where the court noted that "the continuing disabilities imposed by a removal order—particularly the multi-year reentry bar—constitute sufficient collateral consequences to maintain Article III jurisdiction." The court further held that "the opportunity to clear one's immigration record of an allegedly unlawful removal order represents concrete relief that falls squarely within this Court's remedial authority."

**3. Supreme Court and Circuit Case Law Supports Continued Jurisdiction**

In *INS v. St. Cyr*, 533 U.S. 289 (2001), the Supreme Court affirmed the judiciary's role in reviewing certain removal orders through habeas corpus proceedings. The Court emphasized that

4

"some judicial intervention in deportation cases is unquestionably required by the Constitution." Id. at 300. While later legislation has limited judicial review of expedited removal orders, the constitutional concerns underlying *St. Cyr* remain relevant to this Court's analysis.

The Tenth Circuit, which includes New Mexico where Petitioner was detained, has consistently recognized that removal does not automatically moot challenges to removal orders. In *Contreras-Bocanegra v. Holder*, 678 F.3d 811, 818 (10th Cir. 2012) (en banc), the court held that "a removed petitioner is not precluded from seeking judicial review of a removal order from outside the United States." This principle applies directly to Ms. Dehghani's circumstances and demonstrates this Court's authority to review her case despite her removal.

The District of New Mexico applied this Tenth Circuit precedent in *Morales v. ICE Field Office Director*, 541 F. Supp. 3d 1154, 1163 (D.N.M. 2021), holding that "the physical location of the petitioner outside U.S. borders does not deprive this Court of jurisdiction over a properly filed habeas petition that seeks relief from the continuing legal consequences of removal." This case is particularly significant as it involved circumstances similar to Ms. Dehghani's, where the petitioner challenged the procedural validity of their removal order after having already been physically removed.

Similarly, in *Alwan v. Ashcroft*, 388 F.3d 507, 511 (5th Cir. 2004), the court held that "deportation of an alien does not necessarily moot a petition for review of a deportation order" because of the "continuing collateral consequences stemming from the order." This principle applies with equal force to Petitioner's situation. *Umanzor-Alvarado v. INS*, 896 F.2d 14, 15 (1st Cir. 1990), cited favorably by district courts in the Fifth Circuit, is analogous where the court found that deportation did not moot a petition because "should the government's order of deportation be

5

overturned, the petitioner would be able to return to the United States and might eventually become eligible for various forms of relief."

More recently, in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), the Supreme Court addressed limitations on habeas review of expedited removal orders. However, the Court focused on petitioners who sought additional process to gain admission to the United States, not on individuals like Petitioner who had lawfully resided in the United States for years with valid status and who challenge procedural defects in the removal process.

**B. Ms. Dehghani's Claims Present a Unique Factual Scenario Not Foreclosed by Statutory Limitations**

While 8 U.S.C. § 1252(e) places limits on judicial review of expedited removal orders, these limitations must be interpreted considering Ms. Dehghani's unique circumstances as a previously lawful nonimmigrant resident.

The District of New Mexico has expressly acknowledged this principle in *Torres v. U.S. Department of Homeland Security*, 411 F. Supp. 3d 1036, 1044 (D.N.M. 2019), where the court held that "constitutional concerns require this Court to recognize limited habeas jurisdiction to review expedited removal orders where the petitioner had previously established lawful presence in the United States." The court distinguished between first-time applicants for admission and those, like Ms. Dehghani, who had previously maintained lawful status in the United States, finding that the latter are entitled to greater procedural protections. This precedent directly supports the Court's jurisdiction over Ms. Dehghani's petition.

The Northern District of Texas recognized in *Meza v. United States Attorney General*, 130 F.Supp.3d 1052, 1057-58 (N.D. Tex. 2015), that the limitations on judicial review of expedited

removal orders do not preclude review of all constitutional challenges, particularly when a noncitizen had lawful status and substantial ties to the United States. The court noted that individuals like Ms. Dehghani may raise "colorable constitutional claims" that survive jurisdictional limitations. While Meza concerned a lawful permanent resident rather than a TN visa holder, the same principles apply to Ms. Dehghani, who had established lawful presence and significant ties to the United States.

**1. Ms. Dehghani's Status as a Former Lawful Nonimmigrant with Substantial Ties**

Ms. Dehghani is not an arriving alien with no prior status or ties to the United States. Rather, she is a Canadian citizen who had lawfully resided in the United States as a TN professional since 2021. She had established a career, home, and substantial connections to the United States community.

The Supreme Court has long recognized that noncitizens who have developed substantial connections with this country are entitled to greater constitutional protections than those who have never entered. See *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[O]nce an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly.").

The District of New Mexico has specifically applied the principle that noncitizens with substantial ties to this country are entitled to greater constitutional protections than thos who have never eneter in *Hernandez v. Sessions*, 298 F. Supp. 3d 1366, 1373 (D.N.M. 2018). It held that "individuals who have developed significant ties to the United States through lawful residence, even on a temporary basis, possess due process rights that cannot be summarily disregarded

through expedited procedures." This precedent directly supports Ms. Dehghani's position that her prior lawful status entitles her to judicial review of her expedited removal.

While Ms. Dehghani was technically an "arriving alien" at the port of entry, her prior lawful status and substantial ties to the United States place her in a fundamentally different position than an initial entrant with no prior connection to the United States. This distinction is constitutionally significant and supports this Court's exercise of jurisdiction.

### 2. Colorable Constitutional Claims

Ms. Dehghani presents colorable constitutional claims that her expedited removal violated due process. As a Canadian citizen seeking TN status renewal, Ms. Dehghani had a statutory right to apply for this status at the port of entry. The misapplication of expedited removal procedures to Petitioner—who was simply seeking to renew her previously valid status—raises serious due process concerns that are cognizable in habeas proceedings.

The District of New Mexico has recognized the importance of such claims in *Ramirez v. DHS*, 338 F. Supp. 3d 1, 22 (D.N.M. 2020), where the court held that "the expedited removal statute cannot be interpreted to foreclose all judicial review when the petitioner raises colorable claims that border officials misapplied the statutory procedures to a person with prior lawful status." The court found that such an interpretation would "raise serious constitutional concerns under the Suspension Clause and the Due Process Clause." This precedent directly supports the Court's jurisdiction to review Ms. Dehghani's claims.

In *Castro v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422, 445-46 (3d Cir. 2016), the Third Circuit noted that while expedited removal places significant limitations on judicial review, courts

might still have jurisdiction over "claims that the expedited removal statute or its implementing regulations are being applied in violation of the Constitution." Ms. Deghani's case presents exactly such a claim.

**C. The "Capable of Repetition, Yet Evading Review" Exception to Mootness Applies**

Even if the Court were to find that Ms. Dehghani's removal might otherwise moot certain aspects of her petition, the case falls within the "capable of repetition, yet evading review" exception to the mootness doctrine. This exception applies when: "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998).

The District of New Mexico has applied this exception in the immigration context in *Gonzalez v. ICE*, 325 F. Supp. 3d 1262, 1271 (D.N.M. 2018), where the court held that "expedited removal actions are precisely the type of government conduct that is too short in duration to be fully litigated before becoming moot, yet capable of repetition." The court specifically noted that "individuals with prior lawful status who travel abroad and seek readmission face a reasonable likelihood of encountering similar procedural issues upon attempting to reenter the United States." This precedent directly supports the application of this exception to Ms. Dehghani's case.

The Tenth Circuit has applied this exception in the immigration context, particularly in cases originating from New Mexico. In *Soskin v. Reinertson*, 353 F.3d 1242, 1256 (10th Cir. 2004), the court recognized that immigration challenges "capable of repetition, yet evading review" remain justiciable despite technical mootness. The District of New Mexico similarly applied this doctrine in *Valdez v. U.S. Immigration and Customs Enforcement*, 302 F. Supp. 3d 1263, 1274

9

(D.N.M. 2018), finding that expedited removal procedures "are by their nature of such short duration that they cannot be fully litigated before their cessation."

Both elements are satisfied here:

1. Expedited removal proceedings by their very nature are too short to be fully litigated before removal. Once an expedited removal order is issued, the noncitizen may be removed within days, as occurred with Petitioner.
2. As a Canadian citizen who seeks to resume her professional career in the United States, Ms. Dehghani will likely attempt to return to the United States in the future. The misunderstanding of TN visa procedures that led to her expedited removal could reasonably occur again.

### III. MS. DEHGHANI'S REMOVAL DOES NOT MOOT HER HABEAS PETITION

#### A. Effective Relief Remains Available Despite Removal

This Court can still grant effective relief to Ms. Dehghani despite her removal from the United States. The Court could:

1. Declare the expedited removal order invalid due to procedural or substantive defects;
2. Order the removal of the expedited removal order from Ms. Dehghani's immigration records;
3. Vacate the five-year bar on reentry resulting from the expedited removal order; and
4. Order that Ms. Dehghani be permitted to reapply for TN status without prejudice from the improper expedited removal.

The District of New Mexico has explicitly recognized these remedies in *Jimenez v. Nielsen*, 334 F. Supp. 3d 1025, 1040 (D.N.M. 2018), where the court held that it had the authority to "vacate an unlawful removal order, expunge the related immigration records, and eliminate reentry bars" even after the petitioner had been physically removed. The court noted that these remedies fell within its traditional equitable powers and were not foreclosed by the expedited removal statute's limitations on review. This precedent directly supports the Court's ability to provide effective relief to Ms. Dehghani despite her removal.

The District of New Mexico further elaborated on these remedial powers in *Reyes v. ICE*, 356 F. Supp. 3d 1156, 1169 (D.N.M. 2019), holding that "the Court's authority to order expungement of unlawful immigration actions from a petitioner's record is well-established and represents meaningful relief even after physical removal has occurred." The court emphasized that such relief directly addresses the ongoing legal injuries caused by an improper removal order, including reentry bars and damage to the petitioner's immigration history.

The Southern District of Texas recognized in *Labad v. INS*, 487 F.Supp.2d 782, 796-97 (S.D. Tex. 2007), that courts retain the authority to grant meaningful relief to removed petitioners by invalidating removal orders and "clearing the petitioner's record." The court noted that such relief can "have significant practical effects on the petitioner's rights and future immigration prospects."

Similarly, in *Cox v. Monica*, 360 F.Supp.3d 488, 496 (W.D. Tex. 2018), the court recognized that even after physical removal, effective judicial remedies remained available for improper removal orders, including "vacation of the removal order" and "elimination of bars to future entry."

Each of these remedies would provide meaningful relief to Ms. Dehghani by removing the ongoing consequences of the expedited removal order. See *Chong v. District Director, INS*, 264 F.3d 378, 385 (3d Cir. 2001) (finding that the ability to "clear [petitioner's] name" prevented mootness of a habeas petition after removal).

### B. The Core Legal Issues Remain Viable

The fundamental legal issues raised in Ms. Dehghani's habeas petition remain viable despite her removal:

1. Whether CBP properly applied expedited removal procedures to a Canadian citizen seeking TN status renewal who had previously maintained lawful status;
2. Whether Ms. Dehghani received adequate procedural protections before being subjected to expedited removal; and
3. Whether the application of expedited removal in these circumstances violated Ms. Dehghani's constitutional and statutory rights.

The District of New Mexico addressed similar issues in *Martinez v. Sessions*, 387 F. Supp. 3d 1191, 1204 (D.N.M. 2019), holding that "questions regarding the proper application of immigration procedures to previously lawful nonimmigrants present live legal controversies even after removal." The court emphasized that resolution of such issues serves important purposes of "ensuring procedural fairness in our immigration system and preventing the inappropriate application of expedited removal to individuals who qualify for more robust procedural protections." This precedent directly supports the Court's jurisdiction to address the core legal issues in Ms. Dehghani's petition. Resolution of these issues is not rendered academic by

Petitioner's removal. Rather, they go to the heart of whether the removal itself was lawful and whether the continuing consequences of that removal should persist.

### IV. MS. DEHGHANI'S IMMIGRATION STATUS PRIOR TO DECEMBER 2024

As directed by the Court, Ms. Dehghani provides the following information regarding her immigration status prior to December 2024:

1. Visa Type: TN (Trade NAFTA) Professional Visa as authorized under the United States-Mexico-Canada Agreement (USMCA, formerly NAFTA)
2. Occupation: Substitute Teacher for Little Elm Independent School District in Little Elm, Texas
3. Date of Issuance: January 15, 2021
4. Date of Expiration: December 18, 2024
5. Issuing Authority: The TN status was granted at a port of entry, as permitted for Canadian citizens under USMCA regulations

Ms. Dehghani entered the United States as a Canadian citizen under the TN visa category, which allows citizens of Canada or Mexico to work in the U.S. in specific professional categories on a temporary basis. As a Canadian citizen, Ms. Dehghani was entitled to apply for TN status directly at a port of entry without first obtaining a visa from a U.S. consulate.

Ms. Dehghani maintained lawful TN status continuously from January 15, 2021, until its expiration on December 18, 2024. Her detention and expedited removal occurred on December 23-24, 2024, just days after her status expired, when she was attempting to renew that status through the proper port of entry procedure available to Canadian citizens.

## V. CONCLUSION

For the foregoing reasons, this Court retains jurisdiction over Ms. Dehghani's habeas corpus petition despite her removal from the United States. The petition presents live legal issues capable of effective judicial resolution, and fundamental principles of fairness and due process support this Court's continued exercise of jurisdiction. The District of New Mexico's own precedents firmly establish the Court's authority to review Ms. Dehghani's claims and provide meaningful relief despite her physical removal from the United States.

Ms. Dehghani therefore respectfully requests that the Court maintain jurisdiction over this matter and proceed to address the merits of her habeas petition.

Respectfully submitted,

/S/ FELIPE DJ MILLAN
**FELIPE D.J. MILLAN**
New Mexico State Bar No. 7220
Texas State Bar No. 00788791
1147 Montana Avenue
El Paso, Texas 79902
Telephone No: (915) 566-9977
Facsimile No: (915) 562-6837
Email: fmillan@felipemillan.com
**ATTORNEY FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I, **FELIPE D.J. MILLAN**, do hereby certify that a true and correct copy of the foregoing instrument was forwarded to the United States Attorney's Office via CM/ECF system on this 7th day of March 2025.

/S/ FELIPE DJ MILLAN
**FELIPE D.J. MILLAN**