IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AZADEH DEHGHANI,

    Petitioner,

v.                                                                                               No. 2:25-cv-0052 MIS-DLM

DORA CASTRO,
*Otero Processing Center Warden*,

    Respondent.

## MEMORANDUM OPINION AND ORDER ON SANCTIONS AND OTHER DISCIPLINARY ACTION

THIS MATTER is before the Court following a March 26, 2025 Order to Show Cause Hearing ("Hr'g").[1]

On March 11, 2025, the Court issued a third Order to Show Cause in this matter, ordering Petitioner's counsel, Felipe D.J. Millan (hereinafter "Mr. Millan"), to appear in person for a show cause hearing to discuss (i) why Petitioner's writ of habeas corpus, brought pursuant to 28 U.S.C. § 2241, should not be dismissed, and (ii) why sanctions should not be imposed on her counsel for his filing of a brief that cited non-existent cases. (Doc. 22.) On March 14, 2025, Mr. Millan timely filed a memorandum in response to the third Order to Show Cause. (Doc. 23.) On the same day, the Court issued a fourth Order to Show Cause setting an in-person hearing. (Doc. 25.) After careful consideration of the memorandum in response to the third Order to Show Cause (Doc. 23) and hearing arguments on March 26, 2025 from Mr. Millan and Counsel for Respondent, the Court issues the following order sanctioning Mr. Millan.

---

[1] The Hr'g citation refers to an audio recording of the March 26, 2025 Order to Show Cause hearing (Doc. 27) stored on the Court's Liberty system. Neither the audio recording nor a transcript is currently available on CM/ECF; however, any party may obtain the recording through the Court's records department and have it transcribed.

I.  **Background**

On January 16, 2025, Petitioner Dehghani filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. (Doc. 1.) Petitioner was detained at the Otero Processing Center, located at 26 McGregor Range Road, Chaparral, New Mexico 88081, as an individual subject to removal from the United States under 8 U.S.C. § 1225(b)(1)(A)(i).[2] (*See* Doc. 19 at 1.) Fourteen days later, on January 30, 2025, Petitioner filed a motion seeking a hearing. (Doc. 5.) The Court held a status conference on February 6, 2025, to discuss the parties' readiness for an evidentiary hearing. (Doc. 6.) Following that conference, the Court ordered an expedited briefing schedule. (Doc. 9.) Petitioner filed a brief in support of writ of habeas corpus and Respondent filed a memorandum in opposition. (Docs. 10–11.)

On February 24, 2025, the Court issued an Order to Show Cause and directed Petitioner to file a written response, no later than February 26, 2025, as to whether the Court has jurisdiction under 27 U.S.C. § 2241 to review orders of removal under 8 U.S.C. § 1225(b)(1). (Doc. 12.) On February 25, 2025, Petitioner filed a Motion for Writ of Habeas Corpus Ad Testificandum, asking the Court to order her production "at the scheduled hearing" on the Order to Show Cause. (*See* Doc. 13 at 3.) The Court denied the motion, noting that "[c]ounsel for Petitioner ha[d] misinterpreted the Court's directive, as the Court did not set a show cause hearing but rather ordered Petitioner to submit a written response. (Doc. 14 at 1 (citing Doc. 12).) Petitioner shortly re-filed an Amended Motion for Ad Testificandum, seeking the same relief. (*See* Doc. 15.) Again, the Court denied the motion, reiterating that it had not set a hearing, and Petitioner was to respond in writing. (*See* Doc. 16.) Petitioner, on February 26, 2025, filed her written response to the

---

[2] Section 1225(b)(1)(A)(i) provides that an immigration officer may remove an individual who arrives in the United States without proper documentation as described in 8 U.S.C. § 1182(a)(7).

February 24, 2025 Order to Show Cause and gave notice that she may have been removed from the United States. (Doc. 17.)

The Court issued a second Order to Show Cause on February 27, 2025, giving the Respondent until March 5, 2025, to confirm whether Petitioner had been removed from the United States, and giving Petitioner until March 7, 2025, to show cause whether the removal changes the posture of this case and/or moots her habeas petition. (Doc. 18.) On March 5, 2025, Respondent filed a notice confirming Petitioner's removal from the United States on February 25, 2025, under 8 U.S.C. § 1225(b)(1)(A)(i). (*See* Doc. 19.) On March 7, 2025, Petitioner filed her Response to the second Order to Show Cause and argued that the court retains jurisdiction over her habeas petition despite her removal and that her removal does not moot her habeas petition. (Doc. 20.) On March 10, 2025, Respondents filed a brief in response, arguing that Petitioner failed to demonstrate that the court has jurisdiction to review her expedited removal order, that any alleged prolonged detention was resolved by Petitioner's removal, and that the Petitioner cited to numerous cases that Respondents were unable to locate. (Doc. 21.)

The Court, which had reviewed Petitioner's brief and was also unable to find several of the cited cases, issued a third Order to Show Cause on March 11, 2025. (Doc. 22.) The Court ordered Mr. Millan to either provide PDF copies of the cases he cited in the response or appear in-person for a show cause hearing. (Doc. 22.) Mr. Millan timely filed a memorandum in response and asserted that he had hired a freelance attorney, Janelle M. Lewis, through a company called LAWCLERK,[3] to write the response to the Court's second Order to Show Cause. (Doc. 23 at 1– 2.) Mr. Millan stated that his "revisions to [Lewis's draft] were minimal[,]" and he admitted that

---

[3] According to its website, LAWCLERK is a company that allows attorneys to outsource legal projects to freelance lawyers, which enables attorneys "to bill more hours, reduce overhead and increase profit." *See* LAWCLERK, www.lawclerk.legal (last visited Mar. 28, 2025).

3

he "did not read the caselaw or verify the cases used in support of the propositions" before he signed and filed the response brief. (*Id.* at 3.) Finally, Mr. Millan confirmed that the cases listed by the Court in its third Order to Show Cause do not exist. (*Id.* at 4.) Specifically, Mr. Millan stated that when his staff asked Ms. Lewis for PDF copies of the cases she used in the purchased response, she provided seven cases. (*Id.* at 4.) A review of the cases provided revealed that the case names and citations did not match those listed in Petitioner's Response to the second Order to Show Cause. (*See id.* at 4; *see also* Doc. 20.)[4] Although Petitioner's response states that the case citations are corrected, (Doc. 23 at 4), in the March 26, 2025 hearing, Mr. Millan stated the cases he listed as corrected citations were cases that he believed most closely reflected the non-existent cases cited in the Petitioner's March 7, 2025 Response (Doc. 20). (*See* Hr'g at 19:28–22:10.)

---

[4] Mr. Millan provided the following response to the Court's third Order to Show Cause:
> The following are the original cases with their corrected citations. PDF versions of the caselaw are attached as requested by this Honorable Court:
> 1. *Moncada v. Ruiz*, 518 F. Supp 3d 708 (D.N.M. 2021);
> **Correct Citation**: Guzman Chavez v. Hott, 940 F.3d 867 (4th Cir. 2019)
> (Exhibit 1)
> 2. *Vega-Mendoza v. Homeland Security*, 382 F. Supp 3d 1209 (D.N.M. 2019);
> **Correct Citation:** United States v. Vega Mendoza, 928 F.3d 1148 (10th Cir. 2019)
> (Exhibit 2)
> 3. *Morales v. ICE Field Office Director*, 541 F. Supp 3d 1154 (D.N.M. 2021);
> **Correct Citation:** *Adrian Mojica-Morales v. Acting Secretary, United States Department of Homeland Security, et al.*, No. 21-10835 (11th Cir. Jan. 7, 2022).
> (Exhibit 3)
> 4. *Meza v. United States Attorney General*, 130 F. Supp. 3d 1052 (N.D. Tex. 2015);
> **Correct Citation:** Meza v. U.S. Attorney General, 761 F. App'x 904 (11th Cir. 2019)
> (Exhibit 4)
> 5. *Hernandez v. Sessions*, 298 F. Supp. 3d 1366 (D.N.M. 2018);
> **Correct Citation:** Hernandez-Matute v. Sessions, 871 F.3d 206 (5th Cir. 2017)
> (Exhibit 5)
> 6. *Ramirez v. DHS*, 338 F. Supp. 3d 1 (D.N.M. 2020).
> **Correct Citation:** Ramirez v. U.S. Immigration & Customs Enf't, 471 F. Supp. 3d 88
> (D.D.C. 2020)
> **(**Exhibit 6)
> 7. Additional: Caselaw used:
> In re Jorge Tadeo Carrera Hernandez, 21 I. & N. Dec. 731 (BIA 1997)
> **(**Exhibit 7)

(Doc. 23 at 4.)

Mr. Millan's response further explains that the remaining thirteen cases cited in his purchased response to the second Order to Show Cause "do not support the propositions stated in the quoted language and are not from the cited cases." (Doc. 23 at 5.) Mr. Millan asserts that his staff contacted Ms. Lewis via email regarding the purchased response and were informed that ultimately Mr. Millan should have reviewed the work prior to submitting the Response and that per LAWCLERK policy, all the documents and work product Ms. Lewis used for the Response had been destroyed. (Doc. 23-2[5] at 49.) On March 14, 2025, Petitioner filed an Amended Response to the second Order to Show Cause. (Doc. 24.) This response removes the fictitious cases and again argues that the Court retains jurisdiction to review live legal issues and provide meaningful relief despite Petitioner's physical removal from the United States. (*See id.*)

The Court issued a fourth Order to Show cause on March 14, 2025, setting an in-person hearing to discuss why Petitioner's habeas petition should not be dismissed and why sanctions should not be imposed against Mr. Millan. (Doc. 25.) At the hearing, Mr. Millan stated that he has used LAWCLERK for five to seven years and that he purchased the response brief for $750.[6] (*See* Doc. 27 at 1-2.) Mr. Millan "further state[d] that he elected to use LAWCLERK for this brief due to [a] lack of sufficient time to address the Court's order due to having to attend other hearings." (*Id.* at 1.) The question was posed whether it was his practice to *not* check if the cases cited in the briefs from LAWCLERK existed, Mr. Millan stated, "No . . . especially on something that was . . . a Fifth Circuit of Appeals brief or a Tenth Circuit . . . we would go through it." (*See* Hr'g at 15:17–15:30.) When asked about his failure to review the cases contained in *this* case's brief prior to filing, Mr. Millan stated "he concentrated on the 'gist' of the argument, and he could not imagine

---

[5] The Court cites to the CM/ECF document number and pagination, rather than to Petitioner's exhibit numbers.
[6] At the March 26, 2025 hearing, Mr. Millan further disclosed that the cost for the LAWCLERK brief was not passed on to his client in this case, and he worked at a flat fee rate of $4,000. (*See* Hr'g at 16:35–17:07.)

5

a licensed lawyer[, Ms. Lewis,] would make up cases." (Doc. 27 at 1.) Additionally, he stated that changes to the purchased brief were minimal and related to formatting. (*See* Hr'g at 23:16–23:50.) Upon being questioned about the nature of communications between Mr. Millan and Ms. Lewis, Mr. Millan stated that the communications were via email and were between his paralegal and Ms. Lewis. (*See id.* at 17:48–17:59.) Simply, he did not personally contact Ms. Lewis to inform her of the parameters of the project or the Court's request for copies of the cited cases. (*See id.* at 17:59–18:17.)

## II.  Legal Standard

Rule 11 of the Federal Rules of Civil Procedure establishes the standard that attorneys and parties must meet when filing documents in federal court. Specifically, Rule 11(b)(2) states that an attorney presenting "a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it"—to a court "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . ." Fed. R. Civ. P. 11(b)(2).

A failure to comply with such obligations may result in a sanction. *See* Fed. R. Civ. P. 11(c). In determining whether sanctions are warranted, the trial court conducts a two-step analysis. *Adamson v. Bowen*, 855 F.2d 668, 672 (10th Cir. 1988). First, the court must find a filing violates Rule 11. *Id.* To find a Rule 11 violation, an attorney's conduct is evaluated based on "objective reasonableness—whether a reasonable attorney admitted to practice before the district court would file such a document" *Id.* at 673. "If after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law, then such conduct is sanctionable under Rule 11." *Id.* (internal quotation marks and citations omitted).

Second, if the conduct violates Rule 11, a court may then impose an appropriate sanction. *Id.* at 672.

## III.     Rule 11(b) Violation

Although Mr. Millan has claimed to review works previously purchased from LAWCLERK, he neglected to do so for the brief in question. Petitioner's counsel violated Rule 11(b)(2) by (i) improperly delegating his duties to another attorney by submitting that attorney's work without adequately reviewing it and verifying its accuracy, (ii) submitting a response to the second Order to Show Cause that cited non-existent cases, and (iii) cited case law that does not support Petitioner's stated proposition. (*See* Doc. 20.) By filing his response to the Order to Show Cause, Mr. Millan certified, to the "best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,]" that the cases cited within his submissions are "warranted by existing law or by a nonfrivolous argument . . . ." *See* Fed. R. Civ. P. 11(b)(2).

As noted by the court in the March 11, 2025 Order to Show Cause and by Mr. Millan in response to said order, there were at least six non-existent cases that Petitioner used in support of her arguments. (*See* Docs. 11; 23 at 4.) The six cases were fake and likely the handiwork of a ChatGPT or similar artificial intelligence (AI) program's hallucinations.[7] Mr. Millan acknowledges that the Court "correctly noted numerous serious errors, both substantive and technical, in the research included in [the] pleading." (Doc. 23 at 1.) Mr. Millan explains that he utilized the LAWCLERK attorney to prepare the response brief and he admits that he "did not read

---

[7] A hallucination occurs when an AI database generates fake sources of information. To explain how this occurs:
> AI models are trained on data, and they learn to make predictions by finding patterns in the data. However, the accuracy of these predictions often depends on the quality and completeness of the training data. If the training data is incomplete, biased, or otherwise flawed, the AI model may learn incorrect patterns, leading to inaccurate predictions or hallucinations.

*Wadsworth v. Walmart Inc.*, --- F.R.D. ---, 2025 WL 608073, at *1 (D. Wyo. Feb. 24, 2025) (citing What are AI Hallucinations?, GOOGLE CLOUD, https://cloud.google.com/discover/what-are-ai-hallucinations).

7

the case law or verify the cases used in support of the proposition, trusting that the licensed lawyer from [LAWCLERK] would perform her work in an ethical and competent manner." (*Id.* at 1, 3 (emphasis omitted).) "[B]lind reliance on another attorney can be an improper delegation of [an attorney's nondelegable] duty and a violation of Rule 11." *See Wadsworth v. Walmart Inc.*, --- F.R.D. ---, 2025 WL 608073, at *4 (D. Wyo. Feb. 24, 2025) (citations omitted). Moreover, courts have found that "using a fake opinion to support an argument is [also] a violation of Rule 11(b)(2)." *Id.* (citing *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023)). The Court finds that Mr. Millan's conduct, both in submitting Ms. Lewis's work without verifying its accuracy and in submitting a brief that contains fake citations, violates Rule 11.

## IV.    Sanctions

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Courts have consistently held that failing to check the treatment and soundness—let alone the existence—of a case warrants sanctions." *Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC*, No. 2:24-cv-0326 JPH/MJD, 2025 WL 574234, at *2 (S.D. Ind., Feb. 21, 2025) (noting that the act of relying on another attorney's memorandum without Shepardizing the cases cited warranted sanctions). "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." *See* Fed. R. Civ. P. 11(c)(4).

For guidance, the Court looks to other cases that have sanctioned attorneys for similar conduct. In *Wadsworth v. Walmart Inc.*, the drafting attorney filed motions in limine that cited nine cases, eight of which did not exist. 2025 WL 608073, at *2. The court sanctioned the drafting attorney by removing his pro hac vice status and fining him $3,000, and fined the two attorneys

who signed the brief without reviewing it $1,000 each. *Id.* at *8. In *Gauthier v. Goodyear Tire & Rubber Co.*, the attorney filed a response that cited two cases that did not exist. No. 1:23-cv-0281, 2024 WL 4882651, at *1 (E.D. Tex. Nov. 25, 2024). That court ordered the attorney to (i) pay $2,000, (ii) attend a generative AI continuing legal education (CLE) course, and (iii) provide a copy of the court's order to his client in the case. *Id.* at *3. In *Bunce v. Visual Technology Innovations, Inc.*, the attorney filed two separate motions that cited two cases that could not be located "on any legal research tool . . . ." No. 23-cv-1740, 2025 WL 662398, at *1 (E.D. Pa. Feb. 27, 2025). The Court ordered the attorney to pay $2,500 and "complete a one-hour CLE-credited seminar or educational program related to both AI and legal ethics." *Id.* at *4. In *United States v. Hayes*, the attorney, representing a defendant in a criminal matter, filed a motion that cited one case that did not exist. --- F. Supp. 3d ---, 2025 WL 235531, at *2 (E.D. Cal. Jan. 17, 2025). The court ordered the attorney to pay a sanction of $1,500 and ordered the Clerk of Court to serve a copy of the sanctioning order to the two state bars the attorney was licensed in and to all the judges in that district. *Id.* at *15. Finally, in *Mid Central Operating Engineers Health & Welfare Fund v. HoosierVac LLC*, the attorney filed three briefs that cited three cases that did not exist. 2025 WL 574234, at *4–5. The court fined the attorney $15,000—"$5,000 for each of the three briefs filed by [the attorney] where he failed to verify the validity and accuracy of the case law . . . ." *Id.* at *3. The court noted that the "amount is at the 'higher end' of the sanctions that have been previously imposed for similar conduct," but found that "lesser sanctions have been insufficient to deter [this] conduct." *See id.*

      The facts of this case are like those in *Wadsworth*, where the drafting attorney cited AI-generated cases. *See* 2025 WL 608073, at *2. As in *Wadsworth*, where the court acknowledged that two attorneys signed, but were not involved in drafting, the AI-generated content, *see* 2025

9

WL 608073, at *2, Mr. Millan acknowledges that his revisions to the drafted document were "minimal," mostly consisted of formatting, and he did not "read the case law or verify the cases used . . . ." (*See* Doc. 23 at 3 (emphasis omitted); *see also* Hr'g at 23:26–23:50.) In deciding on sanctions, the *Wadsworth* court noted the attorneys' "remedial steps, transparency, and apologetic sentiments." 2025 WL 608073, at *3. Mr. Millan has also been forthcoming about his conduct in failing to review the work of another attorney before signing and filing the document. (*See* Doc. 23 at 3.) The *Wadsworth* court also noted that the non-drafting attorneys "took steps to remediate the situation prior to the potential issuance of sanctions." 2025 WL 608073, at *6. Here, Mr. Millan took similar steps by filing an amended response and volunteering additional information on erroneous citations that were not identified by opposing counsel. (*See* Docs. 23 at 5–7; 24.)

While the Court acknowledges that Mr. Millan was sincerely apologetic for his failure to ensure cases cited in his brief existed and for the extra work this has caused the Court, he has nonetheless failed to adhere to his obligations under Rule 11. Accordingly, the Court finds the following sanctions are appropriate to deter future improper submissions:[8]

- Mr. Millan is ordered to pay a fine of $1,500[9] to the Clerk of Court for the District of New Mexico;

- Mr. Millan is ordered to send a copy of this Order to LAWCLERK, copying Janelle M. Lewis, her supervisor, and LAWCLERK's general Support email address;

---

[8] The Court provided Mr. Millan an opportunity to be heard regarding his position on the sanctions. (*See* Doc. 27 at 2.) Mr. Millan's only objection was to self-reporting his conduct to the state bars. (*See* id.)

[9] Mr. Millan indicated that he was charged $750 for the purchased brief from LAWCLERK. (Doc. 27.) Additionally, at the March 26, 2025 hearing, the Court stated from the bench that it would fine Mr. Millan $2,000. (Hr'g at 26:22–26:42.) After reflection, however, and considering the fee structure Mr. Millan has with Ms. Dehghani, the Court believes a $1,500 fine is warranted. As noted herein, fines and monetary sanctions in other cases range from $1,000 to $15,000. As such, the Court finds it reasonable to issue a fine that is double the fee, $750, Mr. Millan paid for the purchased brief from LAWCLERK.

10

- Mr. Millan is ordered to complete a one-hour CLE-credited seminar or educational program related to legal ethics in writing or the use of AI in writing;

- Mr. Millan is ordered to self-report to both New Mexico and Texas state bars disciplinary boards, explaining this incident and attaching a copy of this Order; and

- Mr. Millan is ordered to report Janelle M. Lewis to the New York state bar disciplinary board, explaining this incident and attaching a copy of this Order.

## V. Conclusion

An attorney who presents a document to the court certifies that they have made a reasonable inquiry into the existing law. Fed. R. Civ. P. 11(b). For the reasons set forth above, the Court finds that Petitioner's counsel violated Federal Rule of Civil Procedure 11(b)(2) by submitting a filing to the Court without adequately reviewing it for accuracy, failing to verify its correctness, and citing authorities that either do not exist or do not support the stated proposition. The Court sanctions counsel under Rule 11(c) as outlined herein. The Court finds these sanctions are not more severe than reasonably necessary to deter repetition of this conduct or deter conduct by others who are in similar circumstances.

**IT IS THEREFORE ORDERED** that Mr. Millan is hereby sanctioned a fine of $1,500 and shall pay the amount to the Clerk of Court for the District of New Mexico within 10 days of this Order.

**IT IS FURTHER ORDERED** that within 10 days of this order, Mr. Millan must send a copy of this Order to LAWCLERK, copying Janelle M. Lewis, her supervisor, and LAWCLERK's general Support email address.

**IT IS FURTHER ORDERED** that within 30 days of this order, Mr. Millan must complete a one-hour CLE-credited seminar or educational program related to legal ethics in writing or the use of AI in writing.

**IT IS FURTHER ORDERED** that within 30 days of this order, Mr. Millan must self-report to both New Mexico and Texas state bars disciplinary boards, explaining this incident and attaching a copy of this Order.

**IT IS FURTHER ORDERED** that within 30 days of this order, Mr. Millan must report Janelle Lewis to the New York state bar disciplinary board, explaining this incident and attaching a copy of this Order.

**IT IS FURTHER ORDERED** that by May 15, 2025, Mr. Millan must submit proof to the Court that he has completed the aforementioned sanctions.

**IT IS SO ORDERED.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE