IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AZADEH DEHGHANI,

    Petitioner,

v.                                                                                                No. 2:25-cv-00052-MIS-DLM

DORA CASTRO,

    Respondent.

## ORDER

**THIS MATTER** is before the Court on Petitioner's Objections to, or, in the Alternative, Appeal of Order on Sanctions and Other Disciplinary Sanctions ("Objections/Appeal"), ECF No. 31, filed on April 16, 2025, and on Petitioner's Motion to Stay Sanction Pending Appeal ("Mot. to Stay"), ECF No. 34, filed on May 5. Upon due consideration of the parties' submissions, the record, and the relevant law the Court will **OVERRULE** the objections, **AFFIRM** the decision of the Magistrate Judge, and **DENY as moot** Petitioner's Motion to Stay.

## BACKGROUND

This matter concerns a petition for writ of habeas corpus filed by Petitioner Azadeh Dehghani, through counsel Felipe D.J. Millan, on January 16, 2025. Pet. Under 28 U.S.C. § 2241 for Writ of Habeas Corpus, ECF No. 1. The undersigned referred this matter to United States Magistrate Judge Damian L. Martinez on January 23, 2025. Order of Reference, ECF No. 3.

In late February, Judge Martinez issued an Order to Show Cause directing Petitioner to explain whether the Court retained jurisdiction in light of Petitioner's removal from the United States. ECF No. 18. Petitioner filed her response thereto on March 7. Pet'r's Resp. Order to Show Cause, ECF No. 20 [hereinafter the Brief]. Respondents filed a brief in response in which they noted that the Petitioner cited to numerous cases that Respondents were "unable to locate."

1

Resp'ts' Br. Resp. Pet'r's Resp. Order to Show Cause at 4, ECF No. 21. Judge Martinez, having also reviewed Petitioner's brief and noted the same problems with case citations, issued another Order to Show Cause on March 11, 2025 in which he ordered Mr. Millan to "send[] PDF versions of each case" to the judge or "appear in-person for a show cause hearing." Order to Show Cause, ECF No. 22. Mr. Millan filed a memorandum in response in which he advised the Court that he "did not have the time to devote to the project" and had contracted with a freelance attorney named Janelle Lewis through a company called LAWCLERK to write the Brief. Mem. Resp. Order to Show Cause Dated Mar. 11, 2025 at 1-2, ECF No. 23. Mr. Millan further advised that he "did not read the caselaw or verify the cases used in support of the propositions [in the Brief], trusting that the licensed lawyer from Lawclerk would perform her work in an ethical and competent manner." Id. at 3. Finally, as Judge Martinez summarized,

> Mr. Millan confirmed that the cases listed by the Court in its third Order to Show Cause do not exist. (Id. at 4.) Specifically, Mr. Millan stated that when his staff asked Ms. Lewis for PDF copies of the cases she used in the purchased response, she provided seven cases. (Id. at 4.) A review of the cases provided revealed that the case names and citations did not match those listed in Petitioner's Response to the second Order to Show Cause. (See id. at 4; see also Doc. 20.) Although Petitioner's response states that the case citations are corrected, (Doc. 23 at 4), in the March 26, 2025 hearing, Mr. Millan stated the cases he listed as corrected citations were cases that he believed most closely reflected the non-existent cases cited in the Petitioner's March 7, 2025 Response (Doc. 20). (See Hr'g at 19:28–22:10.) Mr. Millan's response further explains that the remaining thirteen cases cited in his purchased response to the second Order to Show Cause "do not support the propositions stated in the quoted language and are not from the cited cases." (Doc. 23 at 5.) Mr. Millan asserts that his staff contacted Ms. Lewis via email regarding the purchased response and were informed that ultimately Mr. Millan should have reviewed the work prior to submitting the Response and that per LAWCLERK policy, all the documents and work product Ms. Lewis used for the Response had been destroyed. (Doc. 23-2 at 49.)

Mem. Op. & Order Sanctions & Other Disciplinary Action ("Order on Sanctions" or "Order") at 4-5 (Apr. 2, 2025), ECF No. 28 (footnotes omitted).

Judge Martinez issued another Order to Show Cause on March 14, 2025, "setting an in-person hearing to discuss why Petitioner's habeas petition should not be dismissed and why sanctions should not be imposed against Mr. Millan." *Id.* at 5 (citing ECF No. 25). Following the hearing, Judge Martinez issued an Order on April 2, 2025. *See* Order on Sanctions, ECF No. 28. In that Order, Judge Martinez concluded that Mr. Millan's filing of the Brief was a violation of Rule 11(b). As appropriate sanctions for the violation, Judge Martinez ordered Mr. Millan to pay a fine of $1,500 to the Court; forward the Order to LAWCLERK; complete "a one-hour CLE-credited seminar or educational program related to legal ethics in writing or the use of AI in writing"; self-report to both the New Mexico and Texas state bar disciplinary boards, attaching a copy of the Order; and report the LAWCLERK attorney to the New York state bar disciplinary board, attaching a copy of the Order. *Id.* at 11-12. On April 16, Mr. Millan (through counsel) filed a document styled "Objections to, or, in the Alternative, Appeal of Order on Sanctions and Other Disciplinary Actions." ECF No. 31. In the Objections/Appeal, Mr. Millan takes issue with Judge Martinez's sanction ordering Mr. Millan to self-report to the bars of New Mexico and Texas; he does not challenge the other sanctions in the Order. Objections/Appeal at 3.[1] On May 5, 2025, Mr. Millan (again through counsel) filed a Motion to Stay Sanction Pending Appeal. ECF No. 34.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 636(b)(1)(A) a magistrate judge may "hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class

---

[1] In the Objections/Appeal, Mr. Millan "also requests that the Court reconsider the amount of the fine." ECF No. 31 at 3. But he makes no argument as to the fine, in fact conceding that "a fine is not unwarranted." *Id.* at 4; *see also* Mot. to Stay at 5. Moreover, Mr. Millan has already paid the fine. *See* Objections/Appeal at 3 n.2. This Court, therefore, will not address the fine.

action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." A district judge "may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a). The clearly erroneous standard "requires that the reviewing court affirm unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Questions of law are, however, subject to *de novo* review.

Under 28 U.S.C. § 636(b)(1)(B), a district judge may also designate a magistrate judge "to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition . . . of any motion excepted in subparagraph (A)." The magistrate will file proposed findings of fact and recommendations to which any party may file written objections. 28 U.S.C. § 636(b)(1)(C). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; *see also* Fed. R. Civ. P. 72(3). *De novo* review requires the court to "make an independent determination of the issues; it is not to give any special weight to the prior determination." *Ocelot Oil Corp.*, 847 F.2d at 1464 (cleaned up).

## DISCUSSION

### I.   The Ordered Sanctions Were within the Scope of the Magistrate Judge's Authority

Mr. Millan frames his submission to this Court as alternatively objections or an appeal. He questions Judge Martinez's authority to have ordered the sanctions at issue here: "It is not . . . clear whether the Magistrate Judge has authority to order sanctions outright, whether the Magistrate Judge has authority to recommend sanctions to the district court, or whether the Magistrate Judge

4

has authority to address the matter of sanctions at all, since this issue might not fall under the Order of Reference." Objections/Appeal at 2.

Mr. Millan misunderstands the authority of this Court and of the Magistrate Judge, as well as the scope and effect of the Order of Reference entered in this case. Pursuant to Local Rule, in the District of New Mexico *all* civil cases are *automatically* assigned a pre-trial Magistrate Judge "to preside over all non-dispositive pre-trial matters in accordance with Fed. R. Civ. P. 72(a)." D.N.M.LR-Civ. 73.1(a). In the instant action, this Court additionally referred the *entirety* of the case to the Magistrate Judge, including to recommend an ultimate disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Order of Reference (Jan. 23, 2025), ECF No. 3.[2] Thus, the Order of Reference expanded Judge Martinez's authority in this case to deal with all aspects thereof, with any dispositive order of course being subject to approval by this Court. The Order on Sanctions was clearly within the scope of Judge Martinez's power as designated by this Court and by local rule.

Additionally, magistrate judges in general have the authority to order non-dispositive sanctions under Rule 11. Numerous courts in the Tenth Circuit have held that non-dispositive Rule 11 sanctions fall within the magistrate's general authority to hear and determine pretrial matters under 28 U.S.C. § 636(b)(1)(A). *See, e.g.*, *Bergeson v. Dilworth*, 749 F. Supp. 1555, 1561-63 (D. Kan. 1990); *Lawrence v. Cherry Creek Sch. Dist. No. 5*, No. 24-CV-00678-DDD-KAS, 2025 WL 676256, at *4 (D. Colo. Mar. 3, 2025); *Carlson v. Town of Mountain Village*, No. 17-CV-02887-PAB-STV, 2019 WL 5819971, at *1 (D. Colo. Nov. 7, 2019); *Osuagwu v. Gila Reg'l Med. Ctr.*, No. 11cv001 MV/SMV, 2013 WL 12334166, at *1 (D.N.M. Apr. 24, 2013); *Overhead Sols., Inc. v. A1 Garage Door Serv., L.L.C.*, No. 1:19-cv-01741-PAB-NYW, 2021 WL 5882140, at *1 n.1

---

[2] It's worth noting that the Undersigned referred this case to the Magistrate Judge partially in the hope that doing so would accelerate the resolution of what appeared to be an important claim.

(D. Colo. Dec. 13, 2021); *see also Maisonville v. F2 Am., Inc.*, 902 F.2d 746, 747-48 (9th Cir. 1990); *Grimes v. City & County of San Francisco*, 951 F.2d 236, 240-41 (9th Cir. 1991). *Cf. Ocelot Oil Corp.*, 847 F.2d at 1462 ("Discovery is clearly a pretrial matter, and magistrates thus have general authority to order discovery sanctions."). *But see Bennett v. Gen. Caster Serv. of N. Gordon Co.*, 976 F.2d 995, 997-98 (6th Cir. 1992); *Alpern v. Lieb*, 38 F.3d 933, 935-36 (7th Cir. 1994). Here, the sanctions ordered by Judge Martinez are not dispositive; he did not order dismissal of Petitioner's case, for example. The Order on Sanctions therefore falls under 28 U.S.C. § 636(b)(1)(A), not (B), and is subject to the "clearly erroneous" standard of review. 28 U.S.C § 636(b)(1)(A). Though Mr. Millan is not clear about which specific fact and/or legal conclusions in the Order he is challenging, the Court will apply the clearly erroneous standard as to facts and *de novo* review as to questions of law.

The Court emphasizes that even if *de novo* review were the appropriate standard for the entirety of the Order, the undersigned would impose the same sanction for the reasons discussed below.

**II.    Requiring Self-Reporting to the Bar Is an Appropriate Rule 11 Sanction in this Case**

Federal Rule of Civil Procedure 11 provides, *inter alia*, that "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[] . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]" Fed. R. Civ. P. 11(b), (b)(2). Under Rule 11, a court that determines Rule 11(b) has been violated "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). Rule 11 "sets up

6

a means by which litigants certify to the court . . . that any papers are well founded." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542 (1991). As the Supreme Court has explained, "[t]he central purpose of Rule 11 is to deter baseless filings in district court[.]" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

"The award of Rule 11 sanctions involves two steps. The district court first must find that a pleading violates Rule 11." *Collins v. Daniels*, 916 F.3d 1302, 1319 (10th Cir. 2019) (quoting *Adamson v. Bowen*, 855 F.2d 668, 672 (10th Cir. 1988)). At this step, an attorney's conduct is evaluated "under a standard of objective reasonableness—whether a reasonable attorney admitted to practice before the district court would file such a document." *Id.* at 1320 (quoting *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015)). "The second step is for the district court to impose an appropriate sanction." *Id.* at 1319 (quoting *Adamson*, 855 F.2d at 672). Here, "[t]he court must consider the purposes to be served by the imposition of sanctions and so limit its sanctions 'to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.'" *King v. Fleming*, 899 F.3d 1140, 1148 (10th Cir. 2018) (quoting Fed. R. Civ. P. 11(c)(4)). Courts have "significant discretion in determining what sanctions, if any, should be imposed for a violation[.]" Fed. R. Civ. P. 11(b), (c) advisory committee note to 1993 amendment.

As Judge Martinez thoroughly explained, *see generally* Order on Sanctions, Mr. Millan's filing of the Brief was a clear Rule 11(b) violation. Mr. Millan outsourced his duties to another attorney and failed to adequately review that attorney's work-product and ensure its accuracy before putting his own name on it and filing it with this Court. *See* Response to Order to Show Cause, ECF No. 23 at 3 (Mr. Millan admitting that he "did not read the case law [in the Brief] or verify the cases used in support of the proposition"). The Brief contained numerous inaccurate

caselaw citations, including some caselaw apparently fabricated out of whole cloth. *See id.* at 1 ("The Court . . . correctly noted numerous serious errors, both substantive and technical, in the research" in the Brief). Specifically, Mr. Millan himself identified six cases that did not exist for which he provided "corrected citations," *id.* at 4, and thirteen citations for which "the cases do not support the propositions stated as the quoted language are not from the cited cases[,]" *id.* at 5-7. When Mr. Millan signed and submitted the Brief, he certified under Rule 11 that he had "conducted a reasonable inquiry into the factual and legal basis for the [Brief], and that the substance of the [Brief] [wa]s well-grounded in fact and law." *Coffey v. Healthrust, Inc.*, 955 F.2d 1388, 1393-94 (10th Cir. 1992). In fact, neither was true. A reasonable attorney would not have filed such a document. Mr. Millan clearly violated Rule 11(b) and sanctions are appropriate. *See, e.g.*, *Park v. Kim*, 91 F.4th 610, 615-16 (2d Cir. 2024) (sanctioning attorney for citing non-existent cases); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 460-61 (S.D.N.Y. 2023) (same); *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 495-96 (D. Wyo. 2025) (same); *Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC*, No. 2:24-cv-00326-JPH-MJD, 2025 WL 574234, at *4-5 (S.D. Ind. Feb. 21, 2025) (same); *Gauthier v. Goodyear Tire & Rubber Co.*, No. 1:23-cv-281, 2024 WL 4882651, at *3 (E.D. Tex. Nov. 25, 2024) (same); *United States v. Hayes*, No. 2:24-cr-0280-DJC, 2025 WL 235531, at *13-14 (E.D. Cal. Jan. 17, 2025) (same and collecting cases); *see also* Fed. R. Civ. P. 11(b), (c) advisory committee note to 1993 amendment ("[O]bligations imposed under subdivision (b) obviously require that a pleading, written motion, or other paper, be read before it is filed or submitted to the court.").

In his Objections/Appeal Mr. Millan in fact *concedes* that he violated Rule 11(b). Objections/Appeal at 3 ("There is no question that citing fake cases . . . is a violation of Rule 11."). He nevertheless argues that the Order on Sanctions is clearly erroneous, apparently because he

8

considers the ordered sanctions to be disproportionate to the violation. The Objections/Appeal are glaringly bereft of caselaw. Mr. Millan's primary grievance is that Judge Martinez did not appropriately weigh his good intentions. He emphasizes that he himself did not invent the citations, did not expect the contracted attorney to do so, and has been candid and remorseful regarding the mistake. *Id.* at 2-3. But, as discussed above, the standard under Rule 11 is one of objective reasonableness—the imposition of sanctions does not require a finding of subjective bad faith by the offending attorney. *See Merrill v. Contract Freighters, Inc.*, No. 1:19-cv-02309-CMA-SKC, 2020 WL 5775660, at *5 (D. Colo. Sept. 14, 2020); 5A Charles Alan Wright & Arthur R. Miller § 1335 (4th ed. 2008) ("[C]ourts have regarded the presence of good faith as insufficient to excuse what otherwise is a violation of one of the duties imposed by Rule 11."). An attorney who acts with "an empty head and a pure heart" is nonetheless responsible for the consequences of his actions. *McCandless v. Great Atl. & Pac. Tea Co.*, 697 F.2d 198, 200 (7th Cir. 1983); *see also Collins*, 916 F.3d at 1320 (emphasizing that courts "employ an objective standard intended to eliminate any empty-head pure-heart justification for patently frivolous arguments" (internal quotation marks omitted)); *Roth v. Green*, 123 F. App'x 871, 876 (10th Cir. 2005) (O'Brien, J., concurring). In short, Mr. Millan's ignorance does not excuse his Rule 11(b) violations. It was his responsibility to ensure that the Brief, which he signed and filed, was accurate. *See Wadsworth*, 348 F.R.D. at 495-96 ("[B]lind reliance on another attorney can be an improper delegation of [an attorney's] duty and a violation of Rule 11."). He failed to do so. *See Cooter & Gell*, 496 U.S. at 398 ("The filing of complaints, papers, or other motions without taking the necessary care in their preparation is a[n] . . . abuse of the judicial system, subject to . . . sanction.").

In fashioning sanctions to appropriately address this violation, Judge Martinez was well within his discretion in ordering Mr. Millan to self-report to the Texas and New Mexico bars (of

which he is a member). This Court agrees that such a sanction is appropriate. Report to disciplinary authorities is not an uncommon sanction for an attorney's making misrepresentations to the court in violation of Rule 11(b). *In re Graham*, 981 F.2d 1135, 1142 (10th Cir. 1992) ("A court may also report misconduct by a[n] . . . attorney to that attorney's bar association for the purpose of instituting disciplinary proceedings."); Fed. R. Civ. P. 11(b), (c) advisory committee note to 1993 amendment (specifically recognizing "referring the matter to disciplinary authorities" as an example of a sanction under Rule 11); 5A Wright & Miller § 1335 ("As the cases reflect, there are many possibilities to be considered by the district judge. Among the most prominent are . . . referrals to disciplinary authorities."). *See also, e.g.*, *Carter v. Wal-Mart Stores E., L.P.*, No. 22-10174, 2023 WL 309034, at *4 (11th Cir. 2023) (noting the appropriateness of district court's bar-report sanction); *United States v. Miles*, 923 F.3d 798, 805 n.2 (10th Cir. 2019) ("We direct the clerk to forward copies of this opinion to the State Bar of California and the State Bar of Nevada so that they can assess whether counsel's conduct and/or [the client]'s conduct warrants any sanction."); *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1173 (9th Cir. 2012) ("We recommend that the district court, in the exercise of its discretion, report [the offending attorney] to the state bar to determine whether disbarment or some other sanction is merited."); *La Jolla Spa MD, Inc. v. Avida Pharms., LLC*, No. 17-cv-1124-MMA(WVG), 2019 WL 4141237, at *25 (S.D. Cal. Aug. 30, 2019) (ordering offending counsel to self-report to the state bar); *Mass. Mut. Life Ins. Co. v. Hill*, No. 4:15-cv-166-DMB-JMV, 2017 WL 2773682, at *2 (N.D. Miss. June 26, 2017) (same).

Mr. Millan argues that this sanction is "completely unsupported by the facts of this case," that his conduct "falls far short of an ethical violation," and that Judge Martinez "did not find any facts that would give rise to an ethical violation." Objections/Appeal at 3, 4. He is mistaken. An

attorney's failure to review for accuracy a document that he or she signs and submits to a court, and resulting submission of false information, very clearly implicates several of the attorney's ethical obligations. Both New Mexico's and Texas's Rules of Professional Conduct contain, for example, rules governing candor toward the tribunal and the responsibilities of a supervisory attorney. *See* N.M. Code R. §§ 16-303, 16-501; Tex. Disciplinary R. Prof. Conduct 3.03, 5.01. Though the rules are not identical in the two jurisdictions, in essence they provide that attorneys shall not knowingly make a false statement of fact or law to a tribunal and that supervisory attorneys have some responsibility for ensuring that attorneys under their authority also comply with the rules.

Mr. Millan contends that the state bars "would not take any action against his licenses or board certification" based on his actions in this case. Mot. to Stay at 2. This may be true—whether discipline is warranted is ultimately for those bodies to decide. But the Court agrees with Judge Martinez that Mr. Millan's conduct implicates the disciplinary authority of the two bars. Apparently overburdened, Mr. Millan outsourced the preparation of a brief to a contract attorney and failed to adequately review the work product, and as a result signed and submitted a document rife with misrepresentations to the court. As the New Mexico Supreme Court remarked in *Matter of Martinez*, "As licensed professionals, attorneys are expected to develop procedures which are adequate to assure that they will handle their cases in a proficient fashion and that they will not accept more cases than they can manage effectively. When an attorney fails to do this, he or she may be disciplined even where there is no showing of malicious intent or dishonesty." 717 P.2d 1121, 1122 (N.M. 1986).

The ethics disciplinary bodies in both New Mexico and Texas have issued formal opinions regarding attorneys' use of Artificial Intelligence ("AI"). Although it is not certain that AI was in

fact used here, and even if it was Mr. Millan did not apparently himself employ it, those opinions are nonetheless instructive as to Mr. Millan's responsibilities in his instant use of a contract attorney. In a recent opinion, the Texas State Bar Committee on Professional Ethics stated:

> Though this should likely go without saying, a lawyer should always verify the accuracy of any responses received from a generative AI tool. But this principle apparently wasn't obvious to the ever-increasing number of lawyers who have been caught submitting made-up citations in court filings. So, the Committee will say it again: lawyers are responsible for the work product they submit regardless of who (or what) does the original research and drafting. That means lawyers cannot blindly rely upon or use answers given by generative AI tools. Lawyers who rely on generative AI for research, drafting, and communication risk many of the same perils as those who rely on inexperienced or overconfident nonlawyer assistants. *Cf.* Rule 5.03 (Responsibilities Regarding Nonlawyer Assistants).
>
> A lawyer's failure to verify generative AI outputs can implicate a host of Rules, including Rule 1.01 (Competent and Diligent Representation), Rule 3.01 (Meritorious Claims and Contentions), Rule 3.03 (Candor Toward the Tribunal), and Rule 3.04 (Fairness in Adjudicatory Proceedings), among others.

Prof. Ethics Comm. State Bar Tex., Opinion No. 705 at 5 (Feb. 2025), https://tcle-web.s3.amazonaws.com/public/documents/Opinion_705.pdf.

Similarly, the State Bar of New Mexico Ethics Advisory Committee recently cautioned that "[d]ue to the risks of AI hallucinations or inaccurate results, a lawyer must pay particular care to their duty of candor toward the tribunal under Rule 16-303 and their duty to avoid conduct involving dishonesty or deceit under Rule 16-804(C) when using Generative AI tools to draft documents filed with a court." State Bar N.M. Ethics Advisory Comm., Formal Opinion 2024-004, at 5 (Sept. 24, 2024), https://www.sbnm.org/Portals/NMBAR/GenAI%20Formal%20Opinion%20-%20Sept_2024_FINAL.pdf. The Committee reasoned that Rule 16-303 recognizes the "special duties of lawyers as officers of the court to avoid conduct that undermines the integrity of the adjudicative process," meaning that a "lawyer must not allow the tribunal to be misled by false statements of law[.]" *Id.* Thus, the Committee concluded, a lawyer using AI "must

independently verify the accuracy and sufficiency of all research, citations, and analysis conducted by the AI tool." *Id.* Again, although Mr. Millan did not himself utilize AI, the reasoning underpinning these opinions is instructive here: attorneys must review research and writing from *any* outside source in order to avoid running afoul of their ethical obligations. Mr. Millan failed to do so. A referral to the disciplinary bodies of the New Mexico and Texas state bars is, therefore, an appropriate sanction in the instant matter.

Mr. Millan additionally urges the Court to consider the safe-harbor provision of Rule 11(c)(2). Objections/Appeal at 3-4. Under that rule, a party must first, before filing, serve a motion for sanctions, and if the challenged document "is withdrawn or appropriately corrected within 21 days after service" then the motion shall not be filed. Fed. R. Civ. P. 11(c)(2). But, as Mr. Millan recognizes, Objections/Appeal at 3-4, the sanctions in this case were issued *sua sponte*, not on a motion. The Rule specifically provides for alternative procedures in the case of a *sua sponte* sanctioning: "On its own, the court may order an attorney . . . to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). As the Tenth Circuit has made explicit, "the 'safe harbor' provision does not apply when a court awards sanctions on its own initiative." *Laurino v. Tate*, 220 F.3d 1213, 1219 (10th Cir. 2000). Rather, "[w]hen a court imposes sanctions *sua sponte*, 'due process is satisfied by issuance of an order to show cause why a sanction should not be imposed and by providing a reasonable opportunity for filing a response.' After considering the reasons the attorney proffers to justify his actions, the court may enter an order memorializing its decision to reject or impose sanctions." *In re Martin*, 229 F.3d 1164, 2000 WL 1340168, at *2 (10th Cir. 2000) (quoting *Braley v. Campbell*, 832 F.2d 1504, 1515 (10th Cir. 1987)).

Judge Martinez followed those procedures and therefore ensured that Mr. Millan's due process rights were satisfied in the instant case. As set forth above, Judge Martinez issued Orders to Show Cause on March 11, ECF No. 22, and March 14, ECF No. 25. These orders described the conduct and put Mr. Millan on notice of the threat of sanctions. Mr. Millan was given the opportunity to respond both in written format, *see* ECF No. 23, and in-person at a hearing on March 26, *see* ECF No. 27. Following the hearing, Judge Martinez issued an order "memorializing [his] decision . . . to impose sanctions." *In re Martin*, 2020 WL 1340168, at *2; *see* Order on Sanctions. The safe-harbor provision is inapplicable, and Mr. Millan's argument on that topic is unavailing.

## CONCLUSION

For the foregoing reasons, Petitioner's Objections to, or, in the Alternative, Appeal of Order on Sanctions and Other Disciplinary Sanctions, ECF No. 31, is **OVERRULED** and the decision of the Magistrate Judge, Order on Sanctions, ECF No. 28 is **AFFIRMED**. Mr. Millan shall comply with the Order on Sanctions's mandate that he "self-report to both New Mexico and Texas state bars disciplinary boards," Order on Sanctions at 12, within **fourteen days** of this Order. In addition to "explaining this incident and attaching a copy of [the Order on Sanctions]," *id.*, Mr. Millan shall also attach a copy of the instant Order. Furthermore, Mr. Millan's Motion to Stay Sanction Pending Appeal, ECF No. 34, is **DENIED as moot**. The Court notes that Mr. Millan was in fact required to self-report by May 2—the deadline had already elapsed when Mr. Millan filed his Motion to Stay on May 5. Nonetheless, the Court, as just mentioned, will extend that deadline to fourteen days from entry of this order.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE